**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| OpenTV, Inc. and Nagra France S.A.S., | |
| Plaintiffs, | CIVIL ACTION NO. 6:15-cv-951 |
| v. | |
| Verizon Communications Inc., Verizon Services Corp., Verizon Corporate Resources Group, LLC, Verizon Corporate Services Group Inc., Verizon Data Services LLC, Verizon Media, LLC, Verizon and Redbox Digital Entertainment Services, LLC, and AOL Inc., | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiffs OpenTV, Inc. ("OpenTV") and Nagra France S.A.S. ("Nagra France") (collectively, "Plaintiffs") file this Complaint against Verizon Communications Inc., Verizon Services Corp, Verizon Corporate Resources Group, LLC, Verizon Corporate Services Group Inc., Verizon Data Services LLC, Verizon Media, LLC, Verizon and Redbox Digital Entertainment Services, LLC, and AOL Inc. (collectively "Defendants," "Verizon," or "the Verizon Defendants"). OpenTV and Nagra France allege as follows:

## NATURE OF THE ACTION

1.    OpenTV and Nagra France, members of The Kudelski Group of companies, bring this patent infringement action to stop Verizon from continuing its wrongful and unlicensed use of OpenTV and Nagra France's patented technologies for, among other

things, storing, providing, managing, delivering, securing, playing, and viewing interactive content on smartphones, tablets, computers, digital televisions, and other devices.

2.    The Kudelski Group and its subsidiaries, OpenTV and Nagra France, have a long and distinguished history of innovation, and today these companies design and manufacture widely-used, critically-acclaimed, and award-winning digital media technologies, employ hundreds of employees in the United States and thousands worldwide, and protect their research and development investment with a robust patent portfolio comprising thousands of patents that represent the results of years of innovation, investment and effort by numerous inventors and engineers. Plaintiffs encourage innovation by licensing their intellectual property portfolio, but enforce their patent rights when necessary to protect their research investment and protect the fruits of the efforts of their employees from unauthorized use.

3.    Verizon provides products, features, and services, including but not limited to FiOS TV, FiOS TV CableCARDs, FiOS TV Everywhere, Verizon's go90 mobile video service, and online video delivery and advertising services available with the AOL On player. Verizon also has provided Redbox Instant. These systems, products and services make use of Plaintiffs' patented technology and infringe the following United States patents (the "Asserted Patents"):

a.    U.S. Patent No. 7,055,169, titled "Supporting Common Interactive Television Functionality Through Presentation Engine Syntax" ("the '169 Patent") (Exhibit A attached hereto);

b.   U.S. Patent No. 7,243,139, titled "Enhanced Video Programming System and Method for Incorporating and Displaying Retrieved Integrated Internet Information Segments" ("the '139 Patent") (Exhibit B attached hereto);

c.   U.S. Reissue Patent No. RE40,334, titled "Method and Apparatus for Encrypted Data Stream Transmission" ("the '334 Reissue Patent") (Exhibit C attached hereto);

d.   U.S. Patent No. 7,900,229, titled "Convergence of Interactive Television and Wireless Technologies" ("the '229 Patent") (Exhibit D attached hereto);

e.   U.S. Patent No. 6,678,463, titled "System and Method for Incorporating Previously Broadcast Content into Program Recording" ("the '463 Patent") (Exhibit E attached hereto);

f.   U.S. Patent No. 6,233,736 titled "Media online services access system and method" (the '736 patent) (Exhibit F hereto); and

g.   U.S. Patent No. 6,018,768 titled "Enhanced Video Programming System and Method for Incorporating and Displaying Retrieved Integrated Internet Information Segments") (the '768 patent") (Exhibit G attached hereto).

4.   Plaintiffs seek damages in an amount adequate to compensate them for Verizon's infringement, including trebled damages based on Verizon's willful infringement of the Asserted Patents, a permanent injunction barring Verizon from

continuing to infringe Plaintiffs' patents, and Plaintiffs' attorneys' fees and costs associated with this action.

## JURISDICTION AND VENUE

5.     This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     The Court has personal jurisdiction over Defendants because: Defendants are present within or have minimum contacts within the State of Texas and the Eastern District of Texas; Defendants have purposefully availed themselves of the privileges of conducting business in the State of Texas and in the Eastern District of Texas; Defendants have sought protection and benefit from the laws of the State of Texas; Defendants regularly conduct business within the State of Texas and within the Eastern District of Texas; and Plaintiffs' cause of action arises directly from Defendants' business contacts and other activities in the State of Texas and in the Eastern District of Texas.

7.     More specifically, this Court has personal jurisdiction over Defendants because Defendants directly and/or through intermediaries, ship, distribute, use, offer for sale, sell, and/or advertise products and services in the United States, the State of Texas, and the Eastern District of Texas. This Court also has personal jurisdiction over Defendants because Defendants have committed, contributed to, and induced acts of patent infringement and have regularly and systematically conducted and solicited business in this District by and through at least the sales and offers for sale of

Defendants' products and services, and other contractual arrangements with Defendants' subscribers, customers, developers, distributors and third-party service providers using Defendants' products and services located in and/or doing business in this District.

8.    Upon information and belief, in 2005, Verizon first launched its FiOS service in Texas. Verizon advertises to the public that its "communications revolution began right here in Texas, the first state in the nation to receive Verizon's advanced telecommunications network known as fiber-to-the-premises ("FTTP") and its high-speed voice and data products known as Verizon FiOS." Verizon also advertises that it was "especially proud that our company chose Texas to be the first to have the opportunity to experience FiOS TV." Verizon continues to provide FiOS TV to customers in Texas, including customers living in cities served by the United States District Court for the Eastern District of Texas.

9.    Upon information and belief, Verizon also has a significant presence in Texas. Verizon represents on its website, https://www.verizon.com/about/community/txabout.html, that it has "invested more than $1 billion in plant and equipment" and "owns or manages 939 buildings or locations in Texas." In addition, Verizon claims to employ 12,118 employees throughout Texas.

10.  Upon information in belief, Verizon provides and /or directs Verizon's go90 mobile video service to customers in Texas, including customers living in cities served by the United States District Court for the Eastern District of Texas.

11.   Upon information and belief, Verizon has used and/or provided Redbox Instant to users in Texas, including persons living in cities served by the United States District Court for the Eastern District of Texas.

12.   Upon information and belief, AOL also has a significant presence in Texas. By way of example, AOL owns or manages offices in Texas, has conducted and conducts business in the state of Texas, and/or has engaged in continuous and systematic activities in the state of Texas.

13.   Upon information and belief, AOL provides and/or directs AOL On, AOL Platforms, and AOL advertising and other services to customers in Texas, including customers living in cities served by the United States District Court for the Eastern District of Texas.

14.   Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, Defendants have transacted business in this District, and have directly committed acts of patent infringement in this District.

## THE PARTIES

**A.   Plaintiffs OpenTV, Inc. and Nagra France S.A.S.**

15.   OpenTV is a Delaware corporation whose principal place of business in the United States is located in San Francisco, California.

16.   Nagra France S.A.S. is a French corporation whose principal place of business is located in Paris, France.

17.   OpenTV and Nagra France are subsidiaries of Kudelski SA. Kudelski SA and its subsidiaries make up the various companies of The Kudelski Group. The history of

The Kudelski Group is one highlighted by over 60 years of innovation, award winning products, and loyal, long-term customers who entrust The Kudelski Group with their business. Today, The Kudelski Group is a major employer in the United States, Europe, Asia, and elsewhere, providing jobs in manufacturing, engineering, research and development, marketing, sales, and many other specialties, with over 3,000 employees worldwide.

18.  In 1951, Stefan Kudelski created the first company in what became The Kudelski Group and launched the now legendary "Nagra" line of portable recording devices for cinema, TV and radio recording. Stefan Kudelski's recording devices, and the inventions in them, were considered revolutionary throughout the movie industry. The Nagra devices allowed precise synchronization of audio tape with film, providing filmmakers with studio sound quality during on-location filming.

19.  Throughout his career, Stefan Kudelski received numerous awards and honors for his technological achievements, including four Academy Awards, two Emmy Awards, and Gold Medals from the Society of Motion Picture & Television Engineers, the Audio Engineering Society, Lyra, and Eurotechnica. Mr. Kudelski also was recognized by the Federal Bureau of Investigation ("FBI") for his technological contributions to audio recording. After Mr. Kudelski's death in 2013, he was honored in the "in memoriam" presentation during the 86th Annual Academy Awards in March 2014, described by a single word: Inventor.

20.  The success of the products that The Kudelski Group manufactured and sold in its early years allowed the company to grow and expand. In 1989, The Kudelski

Group expanded the scope of its technological innovation by launching its first conditional access systems for pay TV. Over the next decade, The Kudelski Group continued to expand its technology development in the digital television domain, providing global, universally compatible solutions to manage, organize, enhance, market, and secure digital content, regardless of whether it is transmitted over managed or unmanaged networks and broadcast linearly or on-demand.

21.   Today, digital television is The Kudelski Group's core business. The Kudelski Group has become a world leader in digital security and convergent media solutions for the delivery of digital and interactive content. The Kudelski Group's innovations are continuously contributing to the evolution of the digital television ecosystem, enabling operators to extend their multimedia offerings across the entire digital ecosystem to numerous client devices through traditional managed networks as well as Internet delivery.

22.   The Kudelski Group has also grown as a leader in the digital television domain through acquisitions of pioneering technology companies, including such notable companies as Lysis, Livewire, MediaGuard, SmarDTV, OpenTV, and most recently, Conax, a global provider of content protection for digital TV services over broadcast, broadband, and connected devices.

23.   OpenTV was founded in 1996 as Thomson Sun Interactive, LLC, a joint venture of Thomson Multimedia SA and Sun Microsystems, Inc. In 1997, Thomson Sun Interactive LLC was converted into a newly-formed corporation—OpenTV, Inc. From its inception, OpenTV has been dedicated to developing and commercializing cutting-

edge, patented technology required for the delivery of television and other media content to consumers through cable, satellite, and terrestrial networks, and other managed and unmanaged networks.

24.  OpenTV has a long history of innovation in the field of software for set-top boxes for television sets. Within four years of its creation, OpenTV became the first interactive television middleware provider to integrate its middleware technology into more than 10 million set-top boxes worldwide—more than all other industry competitors combined. OpenTV also partnered with EchoStar's DISH Network, which was the first satellite company to provide interactive television services in the United States. OpenTV's set-top box middleware technologies were key to the successful growth of DISH Network. Today, OpenTV has partnerships with companies worldwide, and OpenTV's middleware has now been incorporated into over 200 million set-top boxes.

25.  In addition to its industry-leading set-top box middleware solutions, OpenTV has been an innovator in web-based content delivery.

26.  As a result of its ongoing commitment to interactive television and web-based content delivery, by 2004-2006, OpenTV led the industry in integrating browser software into television sets, built the first interactive shopping application for DISH Network, successfully launched real-time two-way interactive television shopping services on QVC, and provided the technology for CNN Enhanced TV, among other notable achievements. All of these innovations helped pave the way for the growing revolution in how media content is delivered and enjoyed, including over the Internet.

27.   In addition to these achievements, OpenTV also developed complementary technology related, for example, to personal video recording ("PVR"), video-on-demand ("VOD"), television home networking, advanced advertising methodologies, and tools for recommending content to viewers. The industry has also long recognized OpenTV's technology contributions. For example, OpenTV's PVR was named as one of the best in its field by Seagate Technology in 2009.

28.   Today, OpenTV develops software that enables intuitive and personalized viewing experiences for consumers. OpenTV's software solutions provide a variety of advanced and interactive services for television, including advanced user interfaces, VOD, PVR, high-definition ("HD"), interactive, and addressable advertising, and a variety of enhanced television applications.

29.   The Kudelski Group products that are integrated with the OpenTV platform have won numerous industry awards, including "Best New Technology" at the 2009 DISH Network Interactive Awards for OpenTV, a TV Innovation Award in the category of "Advanced User Interface" for OpenTV's cross-device user experience in 2010, an IPTV World Forum Award for "Best Multiscreen Solution/Service" for Nagra Multiscreen in 2012, and "Best IPTV Technology" for Nagra MediaLive and "Best Middleware" for OpenTV at IBC 2012. OpenTV's next generation middleware software, known as OpenTV5, was widely praised following the 2013 International Broadcasting Convention trade show as a stand-out product for showing "how the user interface and the overall user experience can be enhanced with 4K screens," "bring[ing] the HTML5

user experience and 4K to a new level," and for providing a "stunning" and "compelling" user interface.

30.   OpenTV became a part of The Kudelski Group in 2007 through The Kudelski Group's acquisition of a controlling stake in the company. OpenTV became a wholly-owned subsidiary of Kudelski SA in 2010.

31.   OpenTV's integration into The Kudelski Group has allowed for commercial and technological synergies between other Kudelski Group companies, including Nagra France, and continued innovation in the delivery of digital content. For example, in 2013, The Kudelski Group introduced JoinIn, a connected home solution that allows users to seamlessly deliver secured premium content across multiple devices within a home, including multiple TV screens and mobile devices such as smartphones and tablets. JoinIn integrates OpenTV 5 middleware with security and access control technology from The Kudelski Group's Swiss operating company, Nagravision.

32.   Nagra France first formed as a subsidiary of French television broadcasting company Canal+ and German media corporation Bertelsmann, as a technology provider for conditional access systems ("CAS") and digital television services. Originally known as "Société Européenne de Contrôle d'Accès" or "SECA," the company later became a wholly-owned subsidiary of Canal+ and was renamed Canal+ Technologies SA. The conditional access part of the business and its intellectual property assets were subsequently acquired by The Kudelski Group, and the company became known as Nagra France.

33.   Nagra France's products include CAS technology on cards that contain highly specialized microchips with advanced software and encryption algorithms. These cards, commonly referred to as "smart cards," limit access to digital pay television programs to lawful subscribers who pay for access. "Conditional access" is a term used generally to describe products that control and secure access to digital television signals.

34.   Using compression techniques and other technological advances, digital television allows network operators to deliver more channels, better picture quality, improved security, and a wide range of interactive services that are unavailable using traditional analog signals. To deliver digital content to televisions and consumer devices, network operators typically deploy a digital set-top box or device equipped with a smart card or other conditional access module to convert incoming secure digital television signals into a format that can be processed and displayed on the consumer television or display. The performance and security of digital set-top boxes with smart cards are critical competitive factors in the digital broadcast industry.

35.   The conditional access systems provided by Nagra France and its predecessors enable television network operators to deliver secure programs and interactive services over digital television networks through set-top boxes. The conditional access systems provided by Nagra France were first sold in 1996. These advanced software technology implementations enable and secure digital interactive television through set-top boxes, and enable network operators to manage and control delivery of pay television content, and provide a secure platform for interactive

transactions. Nagra France has more than 400 issued patents and pending applications

covering various aspects of its innovative conditional access solutions.

36.   Through its dedication to developing innovative technologies, OpenTV and

Nagra France's technologies have contributed to the explosive growth of content

delivery and consumption across all broadband networks.

37.   OpenTV employs more than 200 people in the United States, while The

Kudelski Group as a whole employs nearly 400 people within the United States.

38.   The Kudelski Group, including its OpenTV and Nagra France subsidiaries,

devotes substantial resources to research and development. In fact, The Kudelski Group

companies have invested over $3 billion in research and development in the past 20

years.

39.   To protect their investment in research and development, OpenTV, Nagra

France, and the other Kudelski Group companies have garnered a robust international

portfolio of over 4,500 worldwide pending and issued patents, including many related

to the delivery of end-to-end secure media solutions for digital content, and continue to

substantially grow their worldwide patent positions in this and other complementary

technology areas. Over 1,000 of these patents and applications worldwide belong to

OpenTV and over 400 belong to Nagra France.

40.   These patents include key technologies related to content management and

delivery systems, content recommendation engines and targeted content delivery,

subscriber management systems and tools, Digital Rights Management ("DRM") and

other content access control techniques, billing and payment systems, user interfaces,

digital video recorder ("DVR") content storage and scheduling, end-to-end digital content security, including securing digital content within the home network, VOD content selection, advanced advertising techniques, and many others.

41. Companies worldwide have acknowledged the commercial importance of The Kudelski Group's patent portfolio, taking licenses to OpenTV and other Kudelski Group patents relevant to their businesses.

### B. The Verizon Defendants

42. Upon information and belief, Defendant Verizon Communications Inc. is a corporation organized under the laws of Delaware, with a principal place of business at 140 West Street, New York, NY 10007.

43. Upon information and belief, Defendant Verizon Services Corp. is a Delaware corporation with a principal place of business at 22001 Loudon County Pkwy, Ashburn, Virginia 21047-6105. Defendant Verizon Services Corp. is affiliated with Verizon Communications Inc., and has involvement with or responsibilities for Verizon FiOS TV within the overall Verizon corporate structure.

44. Upon information and belief, Defendant Verizon Corporate Resources Group, LLC is a Delaware limited liability company with a principal place of business at One Verizon Way, Basking Ridge, New Jersey 07920. Defendant Verizon Corporate Resources Group LLC is affiliated with Verizon Communications Inc., and has involvement with or responsibilities for FiOS TV within the overall Verizon corporate structure.

45.   Upon information and belief, Defendant Verizon Corporate Services Group, Inc. is a New York corporation with a principal place of business at One Verizon Way, Basking Ridge, New Jersey 07920. Defendant Verizon Corporate Services Group, Inc. is affiliated with Verizon Communications Inc., and has involvement with or responsibilities for FiOS TV within the overall Verizon corporate structure.

46.   Upon information and belief, Defendant Verizon Data Services LLC is a Delaware limited liability company with a principal place of business at 7701 East Telecom Parkway, B3E, Temple Terrace, Florida 33637. Defendant Verizon Data Services LLC is affiliated with Verizon Communications Inc., and has involvement with or responsibilities for FiOS TV within the overall Verizon corporate structure.

47.   Upon information and belief, Defendant Verizon Media, LLC is a Delaware limited liability company with a principal place of business at One Verizon Way, Basking Ridge, New Jersey 07920. Defendant Verizon Media, LLC is affiliated with Verizon Communications Inc., and has involvement or responsibilities for the Verizon go90 mobile video service within the overall Verizon corporate structure.

48.   Upon information and belief, Defendant Verizon and Redbox Digital Entertainment Services, LLC is a Delaware limited liability company with a principal place of business at One Verizon Way, Basking Ridge, NJ 07920. Upon information and belief, Defendant Verizon and Redbox Digital Entertainment Services, LLC is affiliated with Verizon Communications Inc., and has involvement or responsibilities for Redbox Instant. Upon information and belief, Defendant Verizon and Redbox Digital Entertainment Services, LLC is a joint venture between Verizon Ventures IV LLC and

Redbox Automated Retail, LLC. Verizon Ventures IV LLC is a wholly owned subsidiary of Verizon Communications Inc.

49.  Upon information and belief, Verizon is one of the largest wireless communications service providers in the country.

50.  Upon information and belief, Verizon provides video services, which include FiOS TV and other television services, through its "Wireline" business unit.

51.  Upon information and belief, FiOS TV was available to approximately 18 million homes in the U.S. as of May 2013. By the end of March 2015, Verizon's actual total subscriber base for its FiOS Internet and Video subscribers was 6.75 million and 5.74 million, respectively.

52.  Upon information and belief, in connection with its FiOS TV services, Verizon leases CableCards to its FiOS TV customers on a monthly basis.

53.  Upon information and belief, Verizon also provides "Verizon FiOS TV Everywhere," where a user can watch shows, movies, and even live TV from many devices.

54.  Upon information and belief, Verizon recently introduced the Verizon go90 mobile video service on a national basis in October 2015. Verizon's go90 service is a social entertainment platform where users can access live and on-demand video on smartphones and tablets using Verizon's go90 application.

55.  In May 2015, Verizon Communications Inc. announced the signing of an agreement to purchase AOL Inc. for an estimated value of approximately $4.4 billion. Lowell McAdam, Verizon chairman and CEO, publicly stated that the "acquisition

supports our strategy to provide a cross-screen connection for consumers, creators and advertisers to deliver that premium customer experience."

56.   Upon information and belief, AOL Inc. ("AOL") is a Delaware limited liability company with a principal place of business at 770 Broadway, 4th Floor, New York, NY 10003.

57.   Defendant AOL Inc. is a wholly-owned subsidiary of Verizon Communications Inc. and involved with streaming media and online services within the overall Verizon corporate structure.

58.   Upon information and belief, Verizon provides AOL On, a platform for video offerings. AOL users can experience AOL On content across desktop devices, mobile devices, tablets and various connected TV devices.

59.   Upon information and belief, Verizon provides AOL One, a cross-screen advertising platform for optimizing advertising across devices.

60.   Upon information and belief, Verizon's products and services include making, using, or offering to sell or selling digital video recording devices or services, online and television services, digital content streaming, targeted advertising, and interactive advertising.

61.   Notably, Verizon's recent success from its FiOS TV-related products and services has come years after core technologies underlying these products and services were developed by others, including, in the present case, pioneering technologies developed by OpenTV and Nagra France.

## NOTICE

62.  In May 2013, Plaintiffs first contacted Verizon regarding a license to the Asserted Patents. After a period of discussion, the parties' first face-to-face meeting occurred in October 2013. At that meeting, Plaintiffs presented Verizon with details of Verizon's infringement of patents owned by Plaintiffs, including four of the Asserted Patents. Plaintiffs met again with Verizon in March 2014 and discussed additional patents, including the remaining three Asserted Patents.

63.  In February 2014, Plaintiffs separately contacted AOL to discuss a license to the Asserted Patents. At meetings in April and June 2014, Plaintiffs presented claim charts relating to patents including four of the Asserted Patents.

64.  Through the end of 2014 and through the filing of this Complaint, Plaintiffs continued to discuss with Defendants their infringement of the Asserted Patents, and a potential patent license to resolve claims relating to infringement.

65.  In May 2015, Verizon agreed to buy AOL in a $4.4 billion deal. In June 2015, Verizon announced the completion of its acquisition of AOL. Throughout the period of the acquisition, Plaintiffs continued their licensing discussions with Defendants related to the Asserted Patents.

66.  In September 2015, at Verizon's request, Plaintiffs met with Verizon to discuss AOL's infringement of the Asserted Patents. Plaintiffs presented Verizon with claim charts (previously shown to AOL) detailing AOL's infringement of four of the Asserted Patents.

67.  Verizon has been on notice of infringement of at least U.S. Pat. No. 7,055,169 since at least October 9, 2013 when OpenTV presented Verizon with an infringement mapping for the '169 patent.

68.  Verizon has been on notice of infringement of at least U.S. Pat. No. 7,900,229 since at least October 9, 2013 when OpenTV presented Verizon with an infringement mapping for the '229 patent.

69.  Verizon has been on notice of infringement of at least U.S. Pat. No. 6,233,736 since at least October 9, 2013 when OpenTV presented Verizon with an infringement mapping for the '736 patent.

70.  Verizon has been on notice of infringement of at least U.S. Pat. No. 6,018,768 since at least October 9, 2013 when OpenTV presented Verizon with an infringement mapping for the '768 patent.

71.  Verizon has been on notice of infringement of at least U.S. Pat. No. 7,243,139 since at least March 13, 2014 when OpenTV presented Verizon with an infringement mapping for the '139 patent.

72.  Verizon has been on notice of infringement of at least U.S. Pat. No. RE40,334 since at least March 13, 2014 when Plaintiffs presented Verizon with an infringement mapping for the '334 patent.

73.  Verizon has been on notice of infringement of at least U.S. Pat. No. 6,678,463 since at least March 13, 2014 when OpenTV presented Verizon with an infringement mapping for the '463 patent.

74.  In March 13, 2014, OpenTV again presented Verizon with an infringement mapping for U.S. Pat. No. 6,233,736.

75.  On June 11, 2014, OpenTV presented AOL with an infringement mapping for, among other patents, U.S. Patent No. 6,233,736. AOL has been on notice of infringement of the '736 patent since at least June 11, 2014.

76.  On June 11, 2014, Open TV presented AOL with an infringement mapping for, among other patents, U.S. Pat. No. 7,055,169. AOL has been on notice of infringement of the '169 patent since at least June 11, 2014.

77.  On June 11, 2014, Open TV presented AOL with an infringement mapping for, among other patents, U.S. Pat. No. 7,243,139. AOL has been on notice of infringement of the '139 patent since at least June 11, 2014.

78.  On June 11, 2014, Open TV presented AOL with an infringement mapping for, among other patents, U.S. Pat. No. 7,900,229. AOL has been on notice of infringement of the '229 patent since at least June 11, 2014.

## BACKGROUND OF THE TECHNOLOGY

79.  The technology at issue in this case pertains generally to the fields of securely communicating media and communicating large amounts of information such as traditional delivery of broadcast television content, streams of digital video information or application data, and related services and functionality such as video advertising and the organization, viewing, and recording of such content.

80.  The vast majority of U.S. service providers deliver television programming to paying subscribers via radio frequency signals transmitted through coaxial cables, or

in Verizon FiOS, with light pulses transmitted through fiber-optic cables. In order to receive cable television at a given location, cable distribution lines must be available on the local utility poles or underground utility lines. Coaxial cables bring the signal to the subscriber's building through a service drop, an overhead or underground cable. Some installations use an Ethernet cable for data and a coaxial cable for video, while others, such as Verizon, use the Multimedia over Coax Alliance ("MoCA") protocol for both data and video over a single coaxial cable.

81.  Most cable companies, such as Verizon, require a set-top box or CableCARD ready device to view their cable channels, even on newer televisions with digital cable QAM tuners, because most digital cable channels are encrypted to reduce cable service theft. The cable company will typically provide set-top boxes based on the level of service a subscriber purchases, from basic set-top boxes with a standard definition picture connected through the standard coaxial connection on the television, to high-definition wireless DVR receivers connected via HDMI or component connection.

82.  Changes in technologies, business models, and consumer lifestyles are converging to propel the rise of online video and fundamentally transform TV, advertising, and content delivery methods. A major recent trend in delivery of digital online content is the development of "Over-the-Top" ("OTT") delivery of content (such as movies, television, and other media) over the Internet. OTT delivery is done through an ordinary Internet connection that is not tied to the type of content being delivered. In the OTT model, an Internet service provider is responsible only for ensuring that data can be received by the consumer through a provided Internet connection. OTT services

bypass traditional distribution channels like cable and satellite by providing their content "over the top" of broadband networks.

83.  OTT content, including OTT content delivered by Verizon, can often be viewed on a myriad of connected devices, such as televisions, gaming consoles, personal computers, tablets, smartphones, and many other connected devices. OTT services are the catalyst for much of the growth in consumption of online video and other online digital content.

84.  The proliferation of a wider variety of devices—such as mobile computing devices—for viewing rich OTT content has created another new set of challenges relating to presentation of content in a user-friendly way. For example, users now expect to be able to access a wide range of TV and online content, including some premium content, through multiple platforms such as TVs, personal computers, and mobile computing devices, while content providers and advertisers seek to provide content across multiple platforms without compromising security and control.

85.  Over the past 20 years, OpenTV, Nagra France, and the other companies of The Kudelski Group have developed many of the underlying technologies that consumer electronics companies, such as Verizon, are integrating into their products and services, in order to deliver high quality media content and applications to a growing number of consumer devices. For example, OpenTV and Nagra France's portfolios include numerous patents directed to fundamental technologies for content resourcing and delivery, content management and security, and advanced advertising techniques relating to ad insertion and interactive advertising.

86.   OpenTV and Nagra France have been, and remain, industry leaders in developing the technologies required to overcome the significant technical challenges to permit the tremendous growth of digital video content and consumption. Their investments in technology leadership and reputations as technology innovators are harmed by ongoing unauthorized use of their technologies.

## FIRST CLAIM FOR RELIEF

### Infringement of U.S. Patent No. 7,055,169

87.   OpenTV and Nagra France incorporate by reference the foregoing paragraphs.

88.   OpenTV is the owner by assignment of all rights, title, and interest in the '169 Patent.

89.   The '169 Patent is valid and enforceable.

90.   Verizon has infringed, and is currently infringing, the '169 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, equipment, software, and/or services that practice one or more claims of the '169 Patent, including without limitation Verizon's adaptive video technology for managing video presentation resources used in at least Verizon's FiOS TV Everywhere, AOL's streaming video service, Redbox Instant, and Verizon's go90 mobile video service, and other related products, features, and services.

91.   Verizon has had actual knowledge of the '169 Patent and Verizon's infringement of the '169 Patent since at least October 9, 2013, before the filing of this

Complaint. Verizon has been in negotiations with OpenTV and/or Nagra France regarding licensing of the Asserted Patents since at least October 9, 2013. Despite this knowledge, on information and belief, Verizon continued its infringing activities despite an objectively high likelihood that its activities constituted infringement of a valid patent, and this risk was either known or so obvious that it should have been known to Verizon. Thus, on information and belief, Verizon's infringement has been, and continues to be, willful and deliberate.

92.   Verizon induces third parties, including customers, to infringe the '169 Patent in violation of 35 U.S.C. § 271(b) by encouraging and facilitating them to perform actions that Verizon knows to be acts of infringement of the '169 Patent. Upon information and belief, Verizon knows that the use of its software designed to facilitate streaming of content through at least Verizon's FiOS TV Everywhere, AOL's streaming video service, Redbox Instant, and Verizon's go90 mobile video service, constitutes infringement of the '169 Patent. Upon information and belief, Verizon advertises the infringing products and services, publishes specifications and promotional literature encouraging customers to operate the accused products and services, creates and/or distributes user manuals for the accused products and services that provide instruction and/or encourage infringing use, and offers support and/or technical assistance to its customers that provide instructions on and/or encourage infringing use. Verizon also distributes user manuals for the Verizon FiOS TV Services, which encourages users to stream content and infringe the '169 Patent.

93.   For instance, Verizon instructs FiOS TV users: "With Verizon FiOS TV everywhere, you can watch shows, movies, and even live TV from many devices – anytime, and anywhere you can find a high speed Internet connection." Verizon further instructs its customers: "To get started, visit verizon.com/tvonline. Click Sign In at the top of your screen, and login with your Verizon user name and password. . . . Explore the site to watch movies and original series on demand, or click the banners to watch live TV." Likewise, as a further example, Verizon's Redbox Instant service also instructed users to "WATCH MOVIES, WHENEVER, WHEREVER!" Similarly, Verizon advertises content to its AOL users, including but not limited to content such as films, program and news. Verizon instructs its customers to, e.g., "Play Movie" or "WATCH NEW EPISODES." Customers, pursuant to Verizon's instructions, each directly infringe the '169 Patent. Further, Verizon encourages and facilitates its customers to infringe the '169 Patent by indicating that they can access streaming content using Verizon services, products, and/or features. For example, Verizon presents customers who use Verizon's FiOS TV Everywhere, AOL's streaming video service, Redbox Instant, and Verizon's go90 mobile video service, with links, which may be in the form of thumbnails, images, or buttons, to video content, and subsequently indicates to users that those links may be used to access that video content. Customers, pursuant to Verizon's instructions and/or indications, each directly infringe the '169 Patent.

94.   Verizon also contributes to the infringement of the '169 Patent in violation of 35 U.S.C. § 271(c). Verizon contributes to infringement of the '169 Patent by making, using, selling, offering to sell and/or importing software components incorporated with

third-party content to facilitate the download and streaming of content with knowledge that use of that software would infringe the '169 Patent. The accused software components constitute a material part of the invention claimed by the '169 Patent at least because they work in conjunction with third-party products or services, and they are specifically made to operate in a manner that infringes the '169 Patent by allowing content to be downloaded and streamed using, for example, Verizon's FiOS TV Everywhere, AOL's streaming video service, Redbox Instant, and Verizon's go90 mobile video service. The accused software components are separable from Verizon's products and are not staple articles or commodities of commerce suitable for substantial non-infringing use because they necessarily operate in a manner that infringes the '169 Patent. Moreover, Verizon publishes or has published information about infringing aspects of FiOS TV Everywhere, AOL's streaming video service, Redbox Instant, and Verizon's go90 mobile video service, that are practiced using the software components that Verizon provides. As stated above, Verizon knew of the '169 Patent and knew that its actions would lead to infringement of that patent. Therefore, Verizon is also contributing to the direct infringement of the '169 Patent by users of Verizon's services, products, and/or features.

95.   AOL also had actual knowledge of the '169 Patent and AOL's infringement of the '169 Patent since at least June 11, 2014, before the filing of this Complaint.

96.   Defendants have been in negotiations with OpenTV and/or Nagra France regarding licensing of the Asserted Patents since at least October 9, 2013.

97.   Verizon acquired AOL with full and actual knowledge of the '169 patent and the type of technology falling within the scope of the claims of the '169 patent as referred to above.

98.   OpenTV has suffered and continues to suffer damages and irreparable harm as a result of Verizon's past and ongoing infringement.

99.   Unless Verizon's infringement is permanently enjoined, OpenTV will continue to be damaged and irreparably harmed.

### SECOND CLAIM FOR RELIEF

### Infringement of U.S. Patent No. 7,243,139

100. OpenTV and Nagra France incorporate by reference the foregoing paragraphs.

101. OpenTV is the owner by assignment of all rights, title, and interest in the '139 Patent.

102. The '139 Patent is valid and enforceable.

103. Verizon has infringed, and is currently infringing, the '139 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, equipment, software, and/or services that practice one or more claims of the '139 Patent, including without limitation, Verizon's dynamic advertising services for dynamically inserting advertising into video programming on at least Verizon's FiOS TV service, Verizon's FiOS TV Everywhere service, AOL's streaming video service, and Verizon's go90 mobile video service, and other related products, features, and services.

104. Verizon has actual knowledge of the '139 Patent and Verizon's infringement of the '139 Patent since at least March 2014, before the filing of this Complaint. Verizon has been in negotiations with OpenTV and/or Nagra France regarding licensing of the Asserted Patents since at least October 9, 2013. Despite this knowledge, on information and belief, Verizon continued its infringing activities despite an objectively high likelihood that its activities constituted infringement of a valid patent, and this risk was either known or so obvious that it should have been known to Verizon. Thus, on information and belief, Verizon's infringement has been, and continues to be, willful and deliberate.

105. Verizon induces third parties to infringe the '139 Patent in violation of 35 U.S.C. § 271(b) by encouraging and facilitating them to perform actions that Verizon knows to be acts of infringement of the '139 Patent, including without limitation dynamically inserting advertising into video programming. Upon information and belief, Verizon incorporates software components in the accused products and services to obtain information about user demographics and preferences and displays targeted advertisements accessible through at least Verizon FiOS TV services, including at least Verizon's FiOS TV service, Verizon's FiOS TV Everywhere service, AOL's streaming video service, and Verizon's go90 mobile video service. Upon information and belief, Verizon advertises the infringing products and services, publishes specifications and promotional literature encouraging advertisers to operate the accused products and services, creates and/or distributes user manuals for the accused products and services that provide instruction and/or encourage infringing use, and offers support and/or

technical assistance to its customers that provide instructions on and/or encourage infringing use.

106. For instance, Verizon advertises "[u]nique and targeted ads through live, linear and Video on Demand (VOD)" and "[f]lexible ads that work the same for both live and on demand . . . ." Verizon also "helps advertisers reach FiOS television customers with advertisements that may be more relevant to their interests. . . . The ads may appear on a variety of platforms where FiOS television customers can access video content. We help advertisers deliver ads to audiences based on demographic and interest information" including basing ads on "certain information about [customers'] Verizon products and services (such as service packages purchased, video on-demand purchases, and program viewing data)." Third parties, pursuant to Verizon's instructions and/or indications, each directly infringe the '139 Patent.

107. Verizon also contributes to the infringement of the '139 Patent in violation of 35 U.S.C. § 271(c). Verizon knows that its dynamic advertising services for dynamically inserting advertising into video programming, are especially made or especially adapted for use on at least Verizon's FiOS TV service, Verizon's FiOS TV Everywhere service, AOL's streaming video service, and Verizon's go90 mobile video service. The accused dynamic advertising services are separable from Verizon's products and are not staple articles or commodities of commerce suitable for substantial non-infringing use, and constitute a material part of the invention claimed by the '139 Patent at least because they are especially made or especially adapted to be used by advertisers to dynamically insert advertisements into video programming viewed by customers in a

manner that infringes the '139 Patent. Moreover, Verizon publishes information about infringing aspects of the accused dynamic advertising services. Therefore, Verizon is also contributing to the direct infringement of the '139 Patent.

108. AOL also had actual knowledge of the '139 Patent and AOL's infringement of the '139 Patent since at least June 11, 2014 before the filing of this Complaint.

109. Defendants have been in negotiations with OpenTV and/or Nagra France regarding licensing of the Asserted Patents since at least October 9, 2013.

110. Verizon acquired AOL with full and actual knowledge of the '139 patent and the type of technology falling within the scope of the claims of the '139 patent as referred to above.

111. OpenTV has suffered and continues to suffer damages and irreparable harm as a result of Verizon's past and ongoing infringement.

112. Unless Verizon's infringement is permanently enjoined, OpenTV will continue to be damaged and irreparably harmed.

## THIRD CLAIM FOR RELIEF

### Infringement of U.S. Reissue Patent No. RE40,334

113. OpenTV and Nagra France incorporate by reference the foregoing paragraphs.

114. Nagra France is the owner by assignment of all rights, title, and interest in the '334 Reissue Patent.

115. The '334 Reissue Patent is valid and enforceable.

116. Verizon has infringed, and is currently infringing, the '334 Reissue Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, equipment, software, and/or services that practice one or more claims of the '334 Reissue Patent, including without limitation, Verizon's use and distribution of FiOS CableCARDs in Verizon deployed set-top boxes and in retail set-top boxes and related products, features, and services.

117. Verizon has actual knowledge of the '334 Reissue Patent and Verizon's infringement of the '334 Reissue Patent since at least March 2014, before the filing of this Complaint. Verizon has been in negotiations with OpenTV and Nagra France regarding licensing of the Asserted Patents since at least October 9, 2013. Despite this knowledge, on information and belief, Verizon continued its infringing activities despite an objectively high likelihood that its activities constituted infringement of a valid patent, and this risk was either known or so obvious that it should have been known to Verizon. Thus, on information and belief, Verizon's infringement has been, and continues to be, willful and deliberate.

118. Verizon induces third parties, including customers, to infringe the '334 Reissue Patent in violation of 35 U.S.C. § 271(b) by encouraging and facilitating them to perform actions that Verizon knows to be acts of infringement of the '334 Reissue Patent, such as installing and using Verizon's FiOS CableCARDS. Upon information and belief, FiOS CableCARDs are incorporated into Verizon deployed set-top boxes and retail set-top boxes and related products, features, and services. Upon information and

belief, Verizon advertises the infringing products and services, publishes specifications and promotional literature encouraging customers to operate the accused products and services, creates and/or distributes user manuals for the accused products and services that provide instruction and/or encourage infringing use, and offers support and/or technical assistance to its customers that provide instructions on and/or encourage infringing use.

119. For instance, Verizon provides installation and activation instructions for CableCARD users: "Remove the CableCARD from the clear protective cover and slide it into the TV [or recorder]." Verizon further instructs users "You can install your CableCARD with another device by using your desktop In-Home Agent Instructions or following the online activation steps." Verizon also instructs CableCARD users: "CableCARDs plug into the slot labeled 'CableCARD' or 'POD' (Point of Deployment), usually located at the back of your TV or DVR." Customers, pursuant to Verizon's instructions and/or indications, each directly infringe the '334 Reissue Patent.

120. Verizon also contributes to the infringement of the '334 Reissue Patent in violation of 35 U.S.C. § 271(c). Verizon contributes to infringement of the '334 Reissue Patent by making, using, selling, offering to sell and/or importing services, products, and/or features that facilitate the download and streaming of content with knowledge that use of those services, products, and/or features would infringe the '334 Reissue Patent. These include, for example, FiOS CableCARDs in Verizon deployed set-top boxes and in retail set-top boxes. The accused services, products, and/or features constitute a material part of the invention claimed by the '334 Reissue Patent at least

because they work in conjunction with third-party products or services, and they are specifically made to operate in a manner that infringes the '334 Reissue Patent by allowing content to be downloaded and streamed. The accused services, products, and/or features are separable from Verizon's products and are not staple articles or commodities of commerce suitable for substantial non-infringing use because they necessarily operate in a manner that infringes the '334 Reissue Patent. Moreover, Verizon publishes information about infringing aspects that are practiced using the services, products, and/or features that Verizon provides. Therefore, Verizon is also contributing to the direct infringement of the '334 Reissue Patent by users of these services, products, and/or features.

121. Nagra France has suffered and continues to suffer damages and irreparable harm as a result of Verizon's past and ongoing infringement.

122. Unless Verizon's infringement is permanently enjoined, Nagra France will continue to be damaged and irreparably harmed.

## FOURTH CLAIM FOR RELIEF

### Infringement of U.S. Patent No. 7,900,229

123. OpenTV and Nagra France incorporate by reference the foregoing paragraphs.

124. OpenTV is the owner by assignment of all rights, title, and interest in the '229 Patent.

125. The '229 Patent is valid and enforceable.

126. Verizon has infringed, and is currently infringing, the '229 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, equipment, software, and/or services that practice one or more claims of the '229 Patent, including without limitation Verizon's targeted content delivery processes for targeting content to subscribers on multiple subscriber devices based on behavioral activities that occur within and through the Verizon FiOS TV services, including the Verizon FiOS TV Everywhere service, AOL's streaming video service and other AOL services, and Verizon's go90 mobile video service, and other related products, features, and services.

127. Verizon has actual knowledge of the '229 Patent and Verizon's infringement of the '229 Patent since at least October 2013, before the filing of this Complaint. Verizon has been in negotiations with OpenTV and/or Nagra France regarding licensing of the Asserted Patents since at least October 9, 2013. Despite this knowledge, on information and belief, Verizon continued its infringing activities despite an objectively high likelihood that its activities constituted infringement of a valid patent, and this risk was either known or so obvious that it should have been known to Verizon. Thus, on information and belief, Verizon's infringement has been, and continues to be, willful and deliberate.

128. Verizon induces third parties, including customers, to infringe the '229 Patent in violation of 35 U.S.C. § 271(b) by encouraging and facilitating them to perform actions that Verizon knows to be acts of infringement of the '229 Patent, including without limitation updating user profiles and targeting advertisements based on user

activities. Upon information and belief, Verizon incorporates software components in the accused products and services to obtain information about user demographics and preferences and displays targeted advertisements accessible through at least Verizon FiOS TV services, including the Verizon FiOS TV Everywhere service, AOL's streaming video service and other AOL services, and Verizon's go90 mobile video service. Upon information and belief, Verizon advertises the infringing products and services, publishes specifications and promotional literature encouraging customers to operate the accused products and services, creates and/or distributes user manuals for the accused products and services that provide instruction and/or encourage infringing use, and offers support and/or technical assistance to its customers that provide instructions on and/or encourage infringing use.

129. For instance, Verizon engages in dynamic ad insertion as well as targeted advertising. Verizon advertises "[u]nique and targeted ads through live, linear and Video on Demand (VOD)" and "[f]lexible ads that work the same for both live and on demand . . . ." Verizon also "helps advertisers reach FiOS television customers with advertisements that may be more relevant to their interests. . . . The ads may appear on a variety of platforms where FiOS television customers can access video content. We help advertisers deliver ads to audiences based on demographic and interest information" including basing ads on "certain information about [customers'] Verizon products and services (such as service packages purchased, video on-demand purchases, and program viewing data)." Customers, while using Verizon's FiOS TV services, including the Verizon FiOS TV Everywhere service, AOL's streaming video

service and other AOL services, and Verizon's go90 mobile video service, each directly infringe the '229 Patent.

130. Further, Verizon instructs customers that with "Verizon FiOS TV everywhere, you can watch shows, movies, and even live TV from *many devices –* anytime, and anywhere you can find a high speed Internet connection." Customers then each directly infringe the '229 Patent. Similarly, Verizon advertises content to its AOL users, including but not limited to content such as films, program and news. Verizon instructs its customers to, e.g., "Play Movie" or "WATCH NEW EPISODES." Customers, pursuant to Verizon's instructions, each directly infringe the '229 Patent.

131. Verizon also contributes to the infringement of the '229 Patent in violation of 35 U.S.C. § 271(c). Verizon knows that its targeted content delivery processes for targeting content to subscribers on multiple subscriber devices based on behavioral activities that occur within and through the Verizon FiOS TV services, are especially made or especially adapted for use on Verizon FiOS TV services such as the Verizon FiOS TV Everywhere service, AOL's streaming video service and other AOL services, and Verizon's go90 mobile video service. The accused content delivery processes are separable from Verizon's products and are not staple articles or commodities of commerce suitable for substantial non-infringing use, and constitute a material part of the invention claimed by the '229 Patent at least because they are especially made or especially adapted to be used by advertisers to target advertisements to customers in a manner that infringes the '229 Patent. Moreover, Verizon publishes information about

infringing aspects of the accused content delivery processes. Therefore, Verizon is also contributing to the direct infringement of the '229 Patent by users of these products.

132. AOL also had actual knowledge of the '229 Patent and AOL's infringement of the '229 Patent since at least June 11, 2014 before the filing of this Complaint.

133. Defendants have been in negotiations with OpenTV and/or Nagra France regarding licensing of the Asserted Patents since at least October 9, 2013.

134. Verizon acquired AOL with full and actual knowledge of the '229 patent and the type of technology falling within the scope of the claims of the '229 patent as referred to above.

135. OpenTV has suffered and continues to suffer damages and irreparable harm as a result of Verizon's past and ongoing infringement.

136. Unless Verizon's infringement is permanently enjoined, OpenTV will continue to be damaged and irreparably harmed.

## FIFTH CLAIM FOR RELIEF

### Infringement of U.S. Patent No. 6,678,463

137. OpenTV and Nagra France incorporate by reference the foregoing paragraphs.

138. OpenTV is the owner by assignment of all rights, title, and interest in the '463 Patent.

139. The '463 Patent is valid and enforceable.

140. Verizon has infringed, and is currently infringing, the '463 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into

the United States, without authority, products, equipment, software, and/or services that practice one or more claims of the '463 Patent, including without limitation, FiOS TV DVR functionality, and related products, features, and services that allows storage of a program after the start of the program has occurred.

141. Verizon has actual knowledge of the '463 Patent and Verizon's infringement of the '463 Patent since at least March 13, 2014, before the filing of this Complaint. Verizon has been in negotiations with OpenTV and/or Nagra France regarding licensing of the Asserted Patents since at least October 9, 2013. Despite this knowledge, on information and belief, Verizon continued its infringing activities despite an objectively high likelihood that its activities constituted infringement of a valid patent, and this risk was either known or so obvious that it should have been known to Verizon. Thus, on information and belief, Verizon's infringement has been, and continues to be, willful and deliberate.

142. Verizon induces third parties, including customers, to infringe the '463 Patent in violation of 35 U.S.C. § 271(b) by encouraging and facilitating them to perform actions that Verizon knows to be acts of infringement of the '463 Patent. Upon information and belief, Verizon incorporates software components in the accused products and services and provide, for example, FiOS TV DVR functionality and services that allows storage of a program after the start of the program has occurred. Upon information and belief, Verizon advertises the infringing products and services, publishes specifications and promotional literature encouraging customers to operate the accused products and services, creates and/or distributes user manuals for the

accused products and services that provide instruction and/or encourage infringing use, and offers support and/or technical assistance to its customers that provide instructions on and/or encourage infringing use. For example, Verizon instructs FiOS TV users: "Record the show you're watching by pressing **REC** on the remote." Users then directly infringe the '463 Patent.

143. Verizon also contributes to the infringement of the '463 Patent in violation of 35 U.S.C. § 271(c). Verizon contributes to infringement of the '463 Patent by making, using, selling, offering to sell and/or importing software components that facilitate the recording of content with knowledge that use of that software would infringe the '463 Patent. The accused software components constitute a material part of the invention claimed by the '463 Patent at least because such software components, working in conjunction with third-party products or services, are specifically programmed to operate in a manner that infringes the '463 Patent by allowing content to be recorded. The accused software components are separable from Verizon's products and are not staple articles or commodities of commerce suitable for substantial non-infringing use because these software components necessarily operate in a manner that infringes the '463 Patent. Moreover, as discussed above, Verizon publishes information about infringing aspects that are practiced using the software components that Verizon provides. Therefore, Verizon is also contributing to the direct infringement of the '463 Patent by users of these products.

144. OpenTV has suffered and continues to suffer damages and irreparable harm as a result of Verizon's past and ongoing infringement.

145. Unless Verizon's infringement is permanently enjoined, OpenTV will continue to be damaged and irreparably harmed.

## SIXTH CLAIM FOR RELIEF

### Infringement of U.S. Patent No. 6,233,736

146. OpenTV and Nagra France incorporate by reference the foregoing paragraphs.

147. OpenTV is the owner by assignment of all rights, title, and interest in the '736 Patent.

148. The '736 Patent is valid and enforceable.

149. Verizon has infringed, and is currently infringing, the '736 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, equipment, software, and/or services that practice one or more claims of the '736 Patent, including without limitation, Verizon's click-through advertising processes, including but not limited to FiOS TV click-through advertising, FiOS TV Everywhere click-through advertising, AOL On click through advertising, Verizon's go90 mobile video service click-through advertising and other products and/or services that provide access to online information through the use of URLs associated with video content, such as but not limited to FiOS TV widgets.

150. Verizon has actual knowledge of the '736 Patent and Verizon's infringement of the '736 Patent since at least October 9, 2013, before the filing of this Complaint. Verizon has been in negotiations with OpenTV and/or Nagra France regarding

licensing of the Asserted Patents since at least October 9, 2013. Despite this knowledge, on information and belief, Verizon continued its infringing activities despite an objectively high likelihood that its activities constituted infringement of a valid patent, and this risk was either known or so obvious that it should have been known to Verizon. Thus, on information and belief, Verizon's infringement has been, and continues to be, willful and deliberate.

151. Verizon induces third parties, including customers, to infringe the '736 Patent in violation of 35 U.S.C. § 271(b) by encouraging and facilitating them to perform actions that Verizon knows to be acts of infringement of the '736 Patent. Upon information and belief, Verizon knows that the use of its software designed to facilitate providing click-through advertising processes, including but not limited to FiOS TV click-through advertising and widgets, FiOS TV Everywhere click-through advertising, AOL On click through advertising, Verizon's go90 mobile video service click-through advertising, constitutes infringement of the '736 Patent. Upon information and belief, Verizon publishes specifications and promotional literature encouraging customers to operate the accused products and services, creates and/or distributes user manuals for the accused products and services that provide instruction and/or encourage infringing use, and offers support and/or technical assistance to its customers that provide instructions on and/or encourage infringing use. Customers then each directly infringe the '736 Patent.

152. For instance, Verizon advertises that "ads may appear on a variety of platforms where FiOS television customers can access video content." Further, Verizon

encourages and facilitates its customers to infringe the '736 Patent by indicating that they can access online content using Verizon services, products, and/or features. For example, Verizon presents FiOS TV and AOL On users with links to online content during a video program, and subsequently indicates to users that those links may be used to access that online content. Third parties, pursuant to Verizon's instructions and/or indications, each directly infringe the '736 Patent.

153. Verizon also contributes to the infringement of the '736 Patent in violation of 35 U.S.C. § 271(c). Verizon contributes to infringement of the '736 Patent by making, using, selling, offering to sell and/or importing software components incorporated with third-party content to facilitate the download and streaming of content with knowledge that use of that software would infringe the '736 Patent. These include, for example, Verizon's click-through advertising processes, including but not limited to FiOS TV click-through advertising and widgets, FiOS TV Everywhere click-through advertising, AOL On click through advertising, and Verizon's go90 mobile video service click-through advertising. The accused software components constitute a material part of the invention claimed by the '736 Patent at least because they work in conjunction with third-party products or services, and are specifically made to operate in a manner that infringes the '736 Patent by allowing content to be downloaded and streamed. The accused software components are separable from Verizon's products and are not staple articles or commodities of commerce suitable for substantial non-infringing use because they necessarily operate in a manner that infringes the '736 Patent. Moreover, Verizon publishes information about infringing aspects that are practiced using the software

components that Verizon provides. Therefore, Verizon is also contributing to the direct infringement of the '736 Patent by users of these products.

154. AOL also had actual knowledge of the '736 Patent and AOL's infringement of the '736 Patent since at least June 11, 2014 before the filing of this Complaint. AOL has been in negotiations with OpenTV and/or Nagra France regarding licensing of the Asserted Patents since at least June 11, 2014.

155. Verizon acquired AOL with full and actual knowledge of the '736 patent and the type of technology falling within the scope of the claims of the '736 patent as referred to above.

156. OpenTV has suffered and continues to suffer damages and irreparable harm as a result of Verizon's past and ongoing infringement.

157. Unless Verizon's infringement is permanently enjoined, OpenTV will continue to be damaged and irreparably harmed.

## SEVENTH CLAIM FOR RELIEF

### Infringement of U.S. Patent No. 6,018,768

158. OpenTV and Nagra France incorporate by reference the foregoing paragraphs.

159. OpenTV is the owner by assignment of all rights, title, and interest in the '768 Patent.

160. Verizon has infringed, and is currently infringing, the '768 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States, without authority, products, equipment, software, and/or services

that practice one or more claims of the '768 Patent, including without limitation

Verizon's use of URLs associated with video content to automatically obtain online

information related to the video content, such as is used at least in Verizon's FiOS TV

Everywhere, AOL On, Redbox Instant, and Verizon's go90 mobile video service, and

other related products and/or services that provide access to online information

through the use of URLs associated with video content.

161. Verizon has actual knowledge of the '768 Patent and Verizon's infringement

of the '768 Patent since at least October 2013 before the filing of this Complaint. Verizon

has been in negotiations with OpenTV and/or Nagra France regarding licensing of the

Asserted Patents since at least October 9, 2013. Despite this knowledge, on information

and belief, Verizon continued its infringing activities despite an objectively high

likelihood that its activities constituted infringement of a valid patent, and this risk was

either known or so obvious that it should have been known to Verizon. Thus, on

information and belief, Verizon's infringement has been, and continues to be, willful

and deliberate.

162. Verizon induces third parties, including customers, to infringe the '768

Patent in violation of 35 U.S.C. § 271(b) by encouraging and facilitating them to perform

actions that Verizon knows to be acts of infringement of the '768 Patent, including

without limitation automatically obtaining online information related to video content,

such as is used at least in Verizon's FiOS TV Everywhere, AOL On, Redbox Instant, and

Verizon's go90 mobile video service. Upon information and belief, Verizon advertises

the infringing products and services, publishes specifications and promotional literature

encouraging customers to operate the accused products and services, creates and/or distributes user manuals for the accused products and services that provide instruction and/or encourage infringing use, and offers support and/or technical assistance to its customers that provide instructions on and/or encourage infringing use. For instance, Verizon instructs FiOS TV users: "With Verizon FiOS TV everywhere, you can watch shows, movies, and even live TV from many devices – anytime, and anywhere you can find a high speed Internet connection." Verizon further instructs its customers: "To get started, visit verizon.com/tvonline. Click Sign In at the top of your screen, and login with your Verizon user name and password. . . . Explore the site to watch movies and original series on demand, or click the banners to watch live TV." Likewise, as a further example, Verizon's Redbox Instant service also instructed users to "WATCH MOVIES, WHENEVER, WHEREVER!" Similarly, Verizon advertises content to its AOL users, including but not limited to content such as films, program and news. Verizon instructs its customers to, e.g., "Play Movie" or "WATCH NEW EPISODES." Verizon instructs users to Customers then each directly infringe the '768 Patent.

163. Verizon also contributes to the infringement of the '768 Patent in violation of 35 U.S.C. § 271(c). Verizon contributes to infringement of the '768 Patent by making, using, selling, offering to sell and/or importing software components that facilitate the download and streaming of content with knowledge that use of that software would infringe the '768 Patent. The accused software components constitute a material part of the invention claimed by the '768 Patent at least because such software components, working in conjunction with third-party products or services, are specifically

programmed to operate in a manner that infringes the '768 Patent by allowing content to be downloaded and streamed. The accused software components are separable from Verizon's products and are not staple articles or commodities of commerce suitable for substantial non-infringing use because these software components necessarily operate in a manner that infringes the '768 Patent. Moreover, Verizon publishes information about infringing aspects that are practiced using the software components that Verizon provides. Therefore, Verizon is also contributing to the direct infringement of the '768 Patent by users of these products.

164. Verizon acquired AOL with full and actual knowledge of the '768 patent and the type of technology falling within the scope of the claims of the '768 patent as referred to above.

165. OpenTV has suffered and continues to suffer damages and irreparable harm as a result of Verizon's past and ongoing infringement.

166. Unless Verizon's infringement is permanently enjoined, OpenTV will continue to be damaged and irreparably harmed.

## JURY DEMAND

Plaintiffs hereby request a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## REQUEST FOR RELIEF

OpenTV and Nagra France respectfully ask that the Court enter judgment in their favor as follows:

A.      Finding that Verizon has infringed and is infringing each of the Asserted
        Patents;

B.      Finding that Verizon's infringement of the Asserted Patents has been and
        continues to be willful;

C.      Finding that each of the Asserted Patents is valid and enforceable;

D.      Awarding OpenTV and Nagra France damages adequate to compensate
        for Verizon's past and present infringement, but in no event less than a
        reasonable royalty;

E.      Awarding an accounting and supplemental damages for those acts of
        infringement committed by Verizon subsequent to the discovery cut-off
        date in this action through the date Final Judgment is entered;

F.      Ordering that damages for infringement of the Asserted Patents be trebled
        as provided for by 35 U.S.C. § 284 for Verizon's willful infringement of the
        Asserted Patents;

G.      Finding that this case is exceptional;

H.      Awarding OpenTV and Nagra France their attorneys' fees and costs,
        together with pre-judgment and post-judgment interest;

I.      Permanently enjoining Verizon and its parents, subsidiaries, affiliates,
        officers, directors, agents, servants, employees, successors and assigns,
        and all others in active concert or participation with any of the foregoing
        from any further acts of infringement, including contributing to and/or
        inducing infringement, of the Asserted Patents; and

J.      Any further relief that this Court deems just and proper.


Dated: October 30, 2015                    Respectfully submitted,

                                           By: */s/ Andrea L. Gothing by permission Wesley
                                           Hill*
                                           Andrea L. Gothing – LEAD ATTORNEY
                                           (MN Bar No. 319867, CA Bar No. 302633)
                                           (Eastern District of Texas Member)
                                           Seth A. Northrop (CA Bar No. 301229)
                                           Li Zhu (CA Bar No. 302210)
                                           **ROBINS KAPLAN LLP**
                                           2400 W. El Camino Real, Suite 100
                                           Mountain View, CA 94040
                                           Telephone: (650) 784-4040
                                           Facsimile: (650) 784-4041
                                           AGothing@RobinsKaplan.com
                                           SNorthrop@RobinsKaplan.com
                                           LZhu@RobinsKaplan.com

                                           Martin R. Lueck (MN Bar No. 155548)
                                           Stacie E. Oberts (MN Bar No. 278361)
                                           David A. Prange (MN Bar No. 329976)
                                           (Eastern District of Texas Member)
                                           **ROBINS KAPLAN LLP**
                                           800 LaSalle Avenue, Suite 2800
                                           Minneapolis, MN 55402
                                           Telephone: (612) 349-8500
                                           Facsimile: (612) 339-4181
                                           MLueck@RobinsKaplan.com
                                           SOberts@RobinsKaplan.com
                                           DPrange@RobinsKaplan.com

                                           Wesley Hill
                                           TX Bar No. 24032294
                                           WARD, SMITH & HILL, PLLC
                                           1127 Judson Rd., Suite 220
                                           Longview, Texas 75601
                                           Telephone: (903) 757-6400
                                           Facsimile: (903) 757-2323
                                           wh@wsfirm.com

**ATTORNEYS FOR PLAINTIFFS
OPENTV, INC., AND NAGRA FRANCE
S.A.S.**